IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH DONOHUE, Executor of the )
Estate of SUSAN DONOHUE, and )
DEBORAH KINEST, individually and on )
behalf of all persons similarly situated, )
)
      Plaintiffs, )
)
      v. )    C.A. 17-1167
)
THE RETIREMENT SYSTEM OF )
ALLEGHENY COUNTY and )
RETIREMENT BOARD OF ALLEGHENY )
COUNTY, )
)
      Defendants. )

## **MEMORANDUM OPINION AND ORDER**

Presently before the Court are two motions filed by defendants, The Retirement System of Allegheny County and the Retirement Board of Allegheny County (collectively, "Retirement Board"). Defendants first move to dismiss the second amended class action complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 32). Second, they move to strike the class action allegations, or, in the alternative, to deny class certification. (ECF No. 34). For the reasons stated herein, the motion to dismiss will be granted and the motion to strike will be denied as moot.[1]

**I.    Procedural History**

This action was removed from the Court of Common Pleas of Allegheny County on September 6, 2017. (ECF No. 1). A suggestion of death for named plaintiff Susan Donohue was

---

[1] Under the Federal Magistrate Judges Act ("the Act), a Magistrate Judge's jurisdiction may be conferred by consent of the parties. 28 U.S.C. § 636(c). Under the Act, "[u]pon consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1). All parties herein have consented to the Magistrate Judge's jurisdiction. (ECF No. 13).

1

filed on January 24, 2018, and on February 28, 2018, a Second Amended Complaint ("SAC") was filed. (ECF No. 29). The SAC names as plaintiffs Joseph Donohue, Executor of Susan Donohue's estate, and added a newly-named plaintiff, Deborah Kinest.

The pending motions were both filed on April 3, 2018. (ECF Nos. 32, 34). The matters have been fully briefed and are ripe for disposition.

We have jurisdiction pursuant to 18 U.S.C. § 1331 and § 1343(a)(3).

## II. Allegations in the Second Amended Complaint

The allegations in the SAC are as follows. The Retirement System of Allegheny County and the Retirement Board are established under the Second Class County Code, 16 P.S. §§ 4701-16. The Retirement System, pursuant to 16 P.S. § 4702, is established for the administration of retirement benefits for County employees and is directed by the Retirement Board under 16 P.S. § 4703. (SAC at ¶¶ 3, 4). A member who has been employed for not less than 12 years may receive, upon application, a retirement allowance if "totally and permanently disabled physically" even though the employee has not reached the age of sixty, "provided that such proof of such . . . total and permanent disability shall be by the unanimous opinion and sworn statements of three practicing physicians of the county designated by the board." 16 P.S. § 4711(a). (SAC at ¶ 7).

Plaintiffs allege violations of the constitutional right to due process because 16 P.S. § 4711(a) ("the statute") provides no means for an applicant to prove, or offer evidence in support of, his or her entitlement to a disability pension, and no means to obtain review of, or offer evidence challenging the opinion of a Board-designated physician. (SAC at ¶¶ 8, 9, 15). Plaintiffs aver that the statute provides no standards for determining whether an employee is "totally and permanently disabled" and the Board, despite having been empowered to do so, has

2

not adopted rules and regulations pertaining to disability pension applications, citing 16 P.S. § 4705. (SAC at ¶¶ 11-14).

### A. Allegations as to Plaintiff Donohue

Susan Donohue began her employment with Allegheny County as a law clerk to a Magisterial District Judge in 1982. (SAC at ¶ 18). In December 2012, Donohue requested Family and Medical Leave Act ("FMLA") leave due to pain and reduced mobility resulting from severe back degeneration, spondylosis, stenosis, and tears and herniated discs in the lumbar and thoracic regions. (SAC at ¶ 19). On February 1, 2013, Donohue returned to work with temporary accommodations, which were removed by Spring 2014, causing increased pain and forcing her to use paid and unpaid leave. (SAC at ¶¶ 20, 21). In August 2014, Donohue again took FMLA leave. (SAC at ¶ 22). On September 11, 2014, an x-ray revealed severe degenerative arthritis of her left hip, and her treating physician opined that "with her lumbar spine and her hip [it] is going to be difficult for her to continue in the workplace." (SAC at ¶ 23). On November 20, 2014, Donohue had hip replacement surgery that did not address her lumbar and thoracic issues. (SAC at ¶ 24).

By letter dated February 25, 2015, Donohue applied to the Retirement Board for a disability pension under the statute, stating that "due to severe degeneration of my back I can no longer perform my job duties." (SAC at ¶ 26). Donohue was examined by physicians selected by a medical consultant, Dr. Costa, who has a contract with the Retirement Board to make such selections. (SAC at ¶ 27). It is alleged that the Retirement Board did not provide Dr. Costa with written guidelines for determining total and permanent physical disability, and Dr. Costa did not provide any of the physicians who examined her with any such written guidelines. (SAC at ¶¶ 28, 29).

Donohue alleges that one of the examining physicians, Dr. Kasdan, exacerbated her condition resulting in her being placed on bed rest for three weeks, and an examination was then scheduled with a fourth physician. (SAC at ¶ 30). Each examining physician signed a form that was not notarized, placing a check next to a statement that Donohue "IS NOT totally and permanently disabled physically." (SAC at ¶¶ 30, 32). Donohue claims that each of the examining physicians (except Dr. Kasdan) informed her that she would be approved for disability. (SAC at ¶ 31). One of the physicians, Dr. Valeriano, stated in a letter to the Board dated May 22, 2015, that "I believe [Donohue is] disabled from work requiring lifting, climbing or other types of manual labor. However, if accommodation could be made for reasonable break times, she could attempt 'sedentary work.'" (SAC at ¶ 33). Dr. Valeriano also provided a letter to the Social Security Administration identical to that provided to the Retirement Board, in which he concluded that Donohue is totally disabled due to back pain. Both versions of the letter were based on the same exam. (SAC at ¶ 34). On the form provided to Dr. Costa, Dr. Valeriano checked the statement that Donohue "IS NOT totally and permanently disabled physically" and added "if accommodations made — see letter." (SAC at ¶ 35).

On June 18, 2015, the Retirement Board denied Donohue's application as none of the examining physicians had determined her to be totally and permanently disabled. (SAC at ¶ 36). On June 28, 2015, Donohue appealed the denial, and the Retirement Board conducted an appeal hearing on January 14, 2016, at which she submitted evidence. (SAC at ¶¶ 38, 40). On July 6, 2015, the County terminated Donohue's employment as she was unable to return to work and indicated that there did not appear to be an accommodation that would enabled her to perform the essential functions of her position. (SAC at ¶ 37). On September 27, 2015, the Social Security Administration found Donohue to have become disabled (under its rules) on August 27,

2014. (SAC at ¶ 39). On February 25, 2016, Donohue submitted a Reapplication for a Disability Pension. (SAC at ¶ 41). On April 21, 2016, the Retirement Board remanded her initial application to a second panel of physicians to determine whether she was permanently and totally disabled at the time her employment was terminated. (SAC at ¶ 42).

In June and July 2016, Donohue was examined by three physicians selected by Dr. Costa. (SAC at ¶ 44). None of the exams lasted longer than 20 minutes, and the physicians did not take their own x-rays or request a functional capacity exam. (SAC at ¶¶ 47, 48). Each examining physician completed and signed a form, checking a statement that Donohue "IS NOT totally and permanently disabled physically." (SAC at ¶ 49). On October 20, 2016, one of Donohue's treating physicians requested a functional capacity evaluation, which was performed by a physician who ranked her capacity at a "Less than Sedentary level" and concluded she would not be able to perform her former job. (SAC at ¶ 50). In November 2016, Donohue submitted additional medical information to the Retirement Board including the results of the functional capacity exam and independent reports of three non-treating physicians, "each of whom undertook independent medical evaluation" lasting an hour or more and "concluded that Donohue is totally and permanently disabled physically." (SAC at ¶ 51). She also submitted the records submitted to the Social Security Administration. (SAC at ¶ 43).

On December 16, 2016, Donohue was informed that her reapplication for benefits was denied, and she requested an appeal hearing. (SAC at ¶ 52). On February 28, 2017, the Retirement Board held a hearing regarding the denial of Donohue's initial application on remand and the denial of her reapplication. (SAC at ¶ 53). On June 13, 2017, the Hearing Officer issued proposed findings of fact and conclusions of law which were adopted by the Retirement Board on June 15, 2017. (SAC at ¶ 54). The Board declined to consider Donohue's "independent

medical evidence," and concluded that its initial determination was supported by substantial evidence and did not violate Donohue's procedural or substantive due process rights. (SAC at ¶ 55).

Plaintiff Donohue's initial complaint was filed with the Allegheny County Court of Common Pleas soon thereafter, on August 9, 2017 (ECF No. 1, Exhibit B) and the action was removed to federal court on September 6, 2017. The suggestion of death, filed January 24, 2018, indicates that Susan Donohue had recently passed away. (ECF No. 25). The court held a telephonic conference two days later, at which time Plaintiffs' counsel notified the court that the estate of Susan Donohue would request to be named as a substitute party and also, a second named Plaintiff would be added to the SAC.

### B. Allegations as to Plaintiff Debora Kinest

Plaintiff Deborah Kinest ("Kinest") was employed with Allegheny County as an occupational therapy aide at Kane Hospital for 35 years. (SAC at ¶ 56). Kinest took a six month leave for a knee replacement beginning February 14, 2014. (SAC at ¶ 57). Because she was unable to return to work in her old position, a restorative aide position was created for her. (SAC at ¶ 57). Kinest was in the restorative aide position for approximately 1½ years and took another FMLA leave for a hip replacement on May 11, 2015. (SAC at ¶ 58). Following this surgery, Kinest developed complications, including dropped foot neuropathy, a bowel obstruction, wound vacuum and neuropathy, and she was in a nursing facility for rehabilitation until August 12, 2015. (SAC at ¶ 60). Kinest continued with rehabilitation at home with daily nursing visits for the abdominal wound. (SAC at ¶ 60).

Kinest was unable to return to work in her previous position and Allegheny County did not identify any position she was able to perform; therefore, on February 1, 2016, Kinest filed

applied to the Retirement Board for a disability pension and submitted all medical records in her possession to support the application. (SAC at ¶ 61). Kinest was examined by physicians selected by Dr. Costa, who has a contract with the Retirement Board to make such selections. (SAC at ¶ 62). It is further alleged there were no written guidelines for a determination of total and permanent physical disability. (SAC at ¶¶ 63, 64). Kinest alleges that none of the three physicians examined her, but rather spoke to her in an exam room for no more than 15 minutes. (SAC at ¶ 65). Kinest also alleges that each informed her during the appointment that she would be approved for disability. (SAC at ¶ 65). Each of the examining physicians completed and signed a form, checking a statement that Kinest "IS NOT totally and permanently disabled physically." (SAC at ¶ 66). Dr. Hahalyak, noted that Kinest is "impaired neurologically and orthopedically," but concluded that despite "her pain syndrome and lack of sensation in the lower extremities, her need for frequent position changes and inability to ambulate, I believe that she is not totally and permanently disabled from any meaningful occupation." (SAC at ¶ 67). Dr. Hahalyak also provided a statement that Kinest "is not totally and permanently disabled from any gainful employment due to her footdrop and chronic pain with numbness in her left leg and foot." (SAC at ¶ 67).

Dr. Biskin found "no permanent disability" based on Kinest's abdominal operation, without considering her other conditions. (SAC at ¶ 68). Dr. McGonigal noted Kinest's "foot drop, diabetes with diabetic polyneuropathy, generalized osteoarthritis, obesity, hyperlipidemia and metabolic syndrome," but stated that he did "not believe that the petitioner is totally and permanently disabled from any gainful employment in Allegheny County." (SAC at ¶ 69). The physician opinions were forwarded to the Retirement Board on March 24, 2016. (SAC at ¶ 70). Thereafter, the Board notified Kinest that her application was denied. (SAC at ¶ 71). Kinest did

not appeal the determination "because she was not informed of what information she could provide to reverse the denial of her Disability Pension application and/or the appellate procedures available to her would have been inadequate, futile and/or incapable of providing relief." (SAC at ¶ 74).

Kinest began receiving reduced early pension benefit effective June 1, 2016. (SAC at ¶ 72). In a June 26, 2016 Notice of Award, the Social Security Administration found that Kinest became disabled (under its rules) on May 11, 2015, and that her entitlement to monthly disability benefits would begin in November 2015. (SAC at ¶ 73). This finding was based on Kinest's application; there was no hearing before an administrative law judge. (SAC at ¶ 73).

Count I of the SAC alleges violations of Plaintiffs' constitutional right to procedural due process. Count II alleges violations of the constitutional right to substantive due process. Plaintiffs have proposed a class defined as follows:

> All County of Allegheny, Pennsylvania employees who have been employed for a period of not less than twelve years, who have applied for a Disability Pension under 16 P.S. §4711, and who have been denied such Disability Pension on or after July 19, 2015, and all future County of Allegheny, Pennsylvania employees who have been employed for a period of not less than twelve years and will apply for a Disability Pension under 16 P.S. §4711.

SAC at ¶ 76. Plaintiffs seek declaratory and injunctive relief in favor of Plaintiffs and the proposed class, and compensatory damages, attorneys' fees and costs as to Plaintiffs only. (SAC at 18-19).

### III. Standard of Review

Dismissal of a complaint or portion of a complaint is justified under Federal Rule of Civil Procedure 12(b)(6) when a claimant fails to sufficiently state a claim upon which relief can be granted. Avoiding dismissal under Rule 12(b)(6) requires a pleading party's complaint to

8

provide "enough factual matter" to allow the case to move beyond the pleading stage of litigation; the pleader must "'nudge his or her claims across the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

In assessing the merits of a claim subject to a motion to dismiss, a court must engage in a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). First, factual and legal elements of a claim must be distinguished. *Id.* Second, it must be determined whether the facts as alleged support a "plausible claim for relief." *Id*. In making the latter determination, the court must be mindful that the matter pleaded need not include "detailed factual allegations," *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555), and the court must construe all alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *Id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc*., 343 F.3d 651, 653 (3d Cir. 2003)). Moreover, a pleading party need only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler,* 578 F.3d at 213 (quoting *Graff v. Subbiah Cardiology Assoc., Ltd*., 2008 WL 2312671 (W.D. Pa. June 4, 2008)). A well-pleaded complaint, even when "it strikes a savvy judge that actual proof of…facts is improbable," will not be dismissed as long as the pleader demonstrates that his or her claim is plausible. *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555-56).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents."

9

*Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g., Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116–17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker,* 363 F.3d 229, 236 (3d Cir. 2004).

## IV. Discussion

The court will first address Defendant's challenge to the sufficiency of the SAC and whether plaintiff has sufficiently stated a claim upon which relief can be granted.

### A. Motion to Dismiss

#### 1. Count I: Procedural Due Process

Defendants argue that neither Plaintiff Donohue's estate nor Plaintiff Kinest have set forth a plausible procedural due process claim. The Fourteenth Amendment provides that "[n]o state shall ... deprive any person of ... property, without due process of law." U.S. CONST. amend. XIV, § 1. The essential elements of a due process violation occur when a state actor "deprive[s]" a person of "property." U.S. Const. amend. XIV, § 1; *see Gikas v. Washington Sch. Dist.,* 328 F.3d 731, 735 (3d Cir. 2003). Thus, the threshold issues of any due process analysis

are (1) whether the person possessed a cognizable property interest and (2) whether the person suffered a deprivation of that interest by a state actor. *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 316 (M.D. Pa. 2004).

We first address whether the Plaintiffs have sufficiently alleged a cognizable property interest. According to Defendant, the statute only creates a property interest in a disability pension for those who meet the statutory eligibility standards. As alleged, both applicants were awarded federal Social Security disability benefits, but not a disability pension under the statute. Both were found to be ineligible because the required unanimous medical opinions were lacking.

Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Coll. v. Roth,* 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* Entitlement to a benefit has been found where the state has determined an individual is entitled to the benefit, accorded the benefit to that individual, and that individual has a reasonable expectation the benefit will continue in the future. *See Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 195-96 (2001); *American Mfrs. Mut. Ins Co. v. Sullivan*, 526 U.S. 40, 60 (1999); *Pappas*, 331 F. Supp.2d at 317. On the other hand, where an individual merely claims to be eligible for a benefit, but the state has not determined he is entitled to that benefit, as is the case herein, the individual has no property interest in that benefit protected by procedural due process. *Lujan*, 532 U.S. at 196; *Am. Mfrs.*, 526 U.S. at 60-61; *Pappas,* 331 F. Supp. 2d at

317-18. The difference is between entitlement and eligibility. *See Pappas*, 331 F. Supp. 2d at 217. Due process protects the former but not the latter. *See Roth*, 408 U.S. at 577.

With this framework in mind, it is clear that Plaintiffs have not sufficiently alleged that they have a protected property interest in the benefits which they claim they are owed because the Retirement Board, which has the authority to render a decision, has not determined they are entitled to such benefits. *Pappas*, 331 F. Supp.2d at 319-20. "The Due Process Clause does not require, nor permit, this Court to act as a supra-agency appeals board . . . or to replace the role of the state courts in the benefits determination process." *Larsen v. State Employees' Ret. Sys.*, No. 4:07-CV-1838, 2008 WL 11363733, at *4 (M.D. Pa. Aug. 27, 2008) (citing *Reich v. Beharry*, 883 F.2d 239, 242 (3d Cir. 1989) and *Lujan*, 532 U.S. at 196-98).

As Plaintiffs argue, however, (ECF No. 42 at 9), they are asserting a property interest in their ***claim*** for these benefits which was denied without adequate procedural protections.

> In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428-31 (1982), the Supreme Court recognized that property interests for the purpose of the Due Process Clause include not only tangible benefits, but also the state-created right to redress of grievances. The protected interest in a claim for benefits is separate from an interest in the benefits themselves. *See Lujan*, 532 U.S. at 195; *Am. Mfrs*., 526 U.S. at 61 n.13. "When governing 'rules or understandings' accord a cause of action for an alleged harm, such as a breach of a state statute or contract, the individual has a 'legitimate entitlement' to submit that claim for resolution through established adjudicatory procedures. Although the individual is not presently entitled to the remedy sought, he or she is entitled to press a claim for it. This cause of action is a presently enforceable benefit and constitutes 'property' under the Due Process Clause." *Pappas*, 331 F. Supp. 2d at 320.

*Larsen,* 2008 WL 11363733, at *5.

Defendants argue that procedural due process protections were met because the Retirement Board provides an evidentiary hearing which was conducted pursuant to local agency laws, including representation by counsel, a stenographic transcription, presentation of evidence and cross-examination of witnesses. 2 Pa. C.S. §§ 552-554. Plaintiff Kinest did not avail herself

of the hearing, and her application was denied after her physician opinions were forwarded to the Board; she failed to appeal. Plaintiff Donohue did not subpoena and cross-examine the Board-appointed physicians at her counseled hearings.

"Deprivation of a cause of action occurs when adjudicatory procedures for vindication of the claim are foreclosed" whether by final denial of the claim or obstruction of access to such procedures. *Pappas,* 331 F. Supp. 2d at 321. "So long as adjudicatory procedures remain available, the individual has not suffered a deprivation of the cause of action." *Id.* As the Third Circuit has explained:

> In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. A state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them. A due process violation is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.

*Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000).

Plaintiffs allege they lacked notice of the eligibility standard, however. The Second Class County Code, as explained supra, requires that three Board-designated physicians determine that the applicant is "totally and permanently disabled" is equated with being "unable to engage in gainful occupation." According to Defendant, the definition of "totally and permanently disable" are common standards and are defined in similar statutes including the Pennsylvania Municipal Retirement Law and the Social Security Act. 53 P.S. §§ 881.212, 881.411, 42 U.S.C. § 416(i)(1). Defendants aptly note that it is incongruous that Plaintiff Donohue hired three non-treating physicians of her own, who opined she was totally and

13

permanently disabled, and then now avers she lacked notice of the meaning employed by the physicians she hired.

Even so, Defendant argues, Plaintiffs have not alleged a plausible claim because they failed to avail themselves of the process available under the local agency law, citing *Jankowski v. Retirement Bd. of Allegheny County*, No. 1723 C.D. 2006 (Pa. Commw. Ct. April 16, 2007) (unpublished), appeal denied, 937 A.2d 447 (Table) (Pa. Nov. 27, 2007) and *Pappas v. City of Lebanon,* 331 F. Supp.2d 311, 316 (M.D. Pa. 2004). This argument is compelling.

Plaintiffs argue that the Board's failure to adopt regulations or procedures for implementing § 4711 violates their due process rights because it determines their entitlement to an earned retirement benefit in a standardless way. Board-designated physicians are not provided with guidelines or standards on which to base an opinion as to whether an applicant is totally and permanently disabled physically. SAC at ¶ 13. This, Plaintiffs argue, is buttressed by the fact that Plaintiffs did meet the standard set forth in the Social Security act, because they were found by the SSA to be disabled under that statute. Plaintiffs further argue that the Board is constrained by the statute to accept the unanimous opinion and statements of the three Board-designated physicians, which renders the hearing (and any appeal therefrom) meaningless as no evidence can be presented to alter the outcome and any appeal would be futile.

Plaintiffs cite to numerous cases in support of their proposition that the lack of ascertainable standards for disability retirement eligibility violates procedural due process. See ECF No. 42 at 11-13. The vast majority of these cases are not binding on this court, and their limited persuasive value is lost by the fact that the injured parties therein, recipients of a government benefit, received either a notice of termination or a reduction in benefits without

14

disclosure of the methodology for the decision, as opposed to applicants who are determined to be ineligible for a benefit based on medical opinions.

As alleged in the SAC and as provided by law, the Retirement Board provides applicants with copies of the medical reports and holds a full evidentiary hearing to denied applicants under Local Agency law. 2 Pa. C.S. § 551 *et seq*. The initial determination that an applicant is totally and permanently disabled is based on the statutorily required unanimous opinions of three physicians. Plaintiffs both failed to exhaust the adjudicatory procedures available to them under state law. Donohue deferred her statutory appeal in the Court of Common Pleas (after requesting and receiving two hearings at which she was represented by counsel but did not subpoena the Board-appointed physicians for cross examination) (*see* ECF No. 33-1 at 2) and Kinest did not request a hearing. This failure to utilize state law remedies bars the claims. We reiterate: "A due process violation is not compete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Alvin*, 227 F.3d at 116. Moreover, applicants are provided with a copy of the medical reports from the Board-designated physicians, are given an opportunity to respond, to subpoena and cross-examine the physicians and seek clarification of procedures used by the physicians, question their qualifications, and the like. Some such appeals have been successful, as based upon the uncontroverted public record provided by Defendants. *See* ECF No. 46 at n. 1.

After a careful review of the allegations in the SAC and the applicable case law, we find that the Plaintiffs have not alleged facts sufficient to support their procedural due process claims. The motion to dismiss will be granted as to Count I.

### 2. Count II: Substantive Due Process

Next, Defendants seek the dismissal of Count II. At issue is whether Plaintiffs have stated a clam for denial of substantive due process, specifically, whether that statute is a facially invalid legislative act, [2] which is to say, whether there is a legitimate state interest to which 16 P.S. § 4711 is rationally related. To demonstrate that the act has a rational basis, defendant must demonstrate 1) the existence of a legitimate state interest that 2) could be rationally furthered by the statute. *American Express Trav. Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). The rational basis test, although not a toothless one, requires significant deference to the legislature's decision-making and assumptions." *Id.* (internal quotation marks and citations omitted). Accordingly, "a court's inquiry is limited to whether the law 'rationally furthers any legitimate state objective." *Id.* at 367 (quoting *Malmed v. Thornburgh*, 621 F.2d 565, 569 (3d Cir. 1980)). In the Third Circuit, "[i]t is enough that the State offers a conceivable rational basis for its action, and '[t]he court may even hypothesize the motivations of the state legislature to find a legitimate objective promoted by the provision under attack.'" *Id.* (quoting *Malmed*, 621 F.2d at 569). It is "constitutionally irrelevant whether this reasoning in fact underlay the legislative decision[.]" *Id.* (quoting *Flemming v. Nestor*, 363 U.S. 603, 612 (1960)); *see also Morlok v. City of Philadelphia,* No. CV 17-4213, 2018 WL 6092719, at *5 (E.D. Pa. Nov. 21, 2018).

The statute clearly survives rational basis review. There do not appear to be any precedential cases on point, but nevertheless, Defendants have posited numerous legitimate government interests, including limiting the Retirement Board's discretion and preventing potential waste while preserving the financial condition of the pension fund maintained for the

---

[2] Plaintiffs appear to concede that they are not asserting substantive due process claims based on non-legislative action and we will therefore not address such a claim.

benefit of a broad range of employees. The statute was amended by the Pennsylvania General Assembly in 1955 when lawmakers inserted the word "unanimous" to the statutory language. 1955, May 31, P.S. 111, § 1. There is a rational basis to establishing a strict approval process that requires the unanimous agreement of three physicians, rather than a single physician, when making the determination on a claimant's total and permanent disability status. The Retirement Board's discretion is therefore limited. This prevents waste and abuse. For all of these reasons, we find that Plaintiffs have failed to state a facial-challenge substantive due process claim.

Accordingly, Defendants motion to dismiss will be granted with respect to plaintiff's substantive due process claim raising a facial challenge to the statute at Count II.

### B. Motion to Strike Class Allegations

Defendant has also moved, to the extent the court determines that Plaintiffs have advanced a viable constitutional claim at either Count I or II, that the class action allegations be stricken and/or dismissed, pursuant to Federal Rule of Civil Procedure 12(f). That rule permits the court to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Having determined that Plaintiffs' claims do not survive the motion to dismiss, we will deny the motion as moot.[3]

## V. CONCLUSION

---

[3] The Supreme Court of the United States has recognized that with respect to class certification under Federal Rule of Civil Procedure 23, "[s]ometimes the issues are plain enough from the pleadings to determine whether" class certification is appropriate in a given case. *General Tel. Co. of the Southwest. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The United States Court of Appeals for the Third Circuit has explained that in "rare" cases, "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met," a court may strike class allegations contained in a complaint. *Landsman & Funk PC v. Skinder–Strauss Assocs.*, 640 F.3d 72, 93 n. 30 (3d Cir. 2011). Federal Rules of Civil Procedure 12 and 23 allow courts to strike class allegations at the pleading stage "if class treatment is evidently inappropriate from the face of the complaint." *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp.3d 610, 615 (E.D. Pa. 2015). Based on our review of the public records provided by Defendants, it appears likely that Plaintiffs would not be able to meet the requirement of numerosity,and given the highly individualized nature of the application process, it is uncertain Plaintiffs could meet the typicality prong as well.

For the reasons stated herein, Defendants Motion to Dismiss the second amended class action complaint (ECF No. 32) will be granted and the Motion to Strike the class action allegations, or, in the alternative, to deny class certification. (ECF No. 34) will be denied as moot.

An appropriate order follows.


DATED: December 21, 2018 By the Court:

/s/ *Cynthia Reed Eddy*
Hon. Cynthia Reed Eddy
Chief United States Magistrate Judge

cc: Record Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH DONOHUE, Executor of the Estate of SUSAN DONOHUE, and DEBORAH KINEST, individually and on behalf of all persons similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. 17-1167 |
| THE RETIREMENT SYSTEM OF ALLEGHENY COUNTY and RETIREMENT BOARD OF ALLEGHENY COUNTY, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

AND NOW, to-wit, this 21st day of December, 2018, Defendants' Motion to Dismiss the Second Amended Class Action Complaint (ECF No. 32) is hereby **GRANTED** and said complaint is dismissed with prejudice.

IT IS FURTHER ORDERED that the Motion to Strike the Class Action Allegations, or, in the Alternative, to Deny Class Certification. (ECF No. 34) is **DENIED AS MOOT**.

The Clerk of Court is directed to mark this case **CLOSED.**

/s/ *Cynthia Reed Eddy*
Hon. Cynthia Reed Eddy
Chief United States Magistrate Judge

cc: Record Counsel